[Crim. No. 636.   Second Appellate District, Division One.—February 11, 1919.]

## THE PEOPLE, Respondent, v. KHAIR DIN, Appellant.

CRIMINAL LAW — MURDER—JURY — ERROR IN DENYING CHALLENGE FOR CAUSE.—In a prosecution for murder the defendant was prejudicially injured by the denial of a challenge for cause to a juror where the defendant exhausted his peremptory challenges, and was thereafter denied a challenge for cause, and it appeared from the examination to the first challenged juror that such juror had an opinion as to the guilt of the defendant independent of any evidence.

ID.—EVIDENCE—HEARSAY.—The trial court erred in refusing to strike out as hearsay certain answers given by a witness of the prosecution that he had got "information from good authority" as to the movements of the defendant and the direction in which he was traveling.

APPEAL from a judgment of the Superior Court of Imperial County, and from an order denying a motion for a new trial.   Franklin J. Cole, Judge.   Reversed.

The facts are stated in the opinion of the court.

O. V. Willson for Appellant.

U. S. Webb, Attorney-General, and Joseph L. Lewinsohn, Deputy Attorney-General, for Respondent.

CONREY, P. J.—The defendant was convicted of the crime of murder of the first degree and sentenced to imprisonment for life. He appeals from the judgment and from an order denying his motion for a new trial.

The victim of the alleged murder was one Fared Bakhsh and the date of the alleged killing was August 13, 1917. It appears that another man named Hassen Ali was killed at the same time, but this prosecution was for the killing of Fared Bakhsh. Hassen Ali, together with one Chanda Khan and the defendant, were living on a ranch in Imperial County of which they were lessees. The evidence tends to show that Chanda Kahn was not at the ranch at the time of the killing. No witness has been produced who saw the tragedy enacted or who was on the place at the time. The defendant did not testify, but his defense is that he was not there at that time. On the morning of August 14th a man who visited the ranch found the dead body of Fared Bakhsh lying on the ground a short distance away from the ranch house, and the dead body of Hassen Ali was found on a bed in the house. The evidence shows that on August 17th the defendant appeared at Tia Juana, in Mexico, more than a hundred miles away from the ranch where the killing was done, and there took the stage to Ensenada. A few days later he was arrested at Ensenada and afterward on extradition proceedings was brought back across the border to Imperial County. When arrested at Ensenada he denied that his name was Khair Din and denied that he had lived in Imperial County. The prosecution endeavored to show that the defendant went by way of Mexicali to Tia Juana on foot by an unfrequented road. By what has been said it will be seen that the conviction was had upon circumstantial evidence.

The first assignment of error is that the court erred in denying the challenge for cause to the prospective juror, Fred Guntermann. One G. G. Gonzales, a deputy sheriff of Imperial County, engaged in search for the defendant on and after August 14th. Guntermann testified that he lived near Calexico, which is a town in Imperial County adjoining Mexicali,

a town on the Mexican side of the line.   Guntermann testified
that he discussed the matter of the murder with Gonzales, who
went to get the defendant across the line.   Guntermann fur-
ther testified as follows: ''Q. Have you any knowledge as to
which way he went to Ensenada?   A. What was spoken of
at the time; he didn't take the steamer and he didn't take the
stage, and knowing the roads, I don't think I ought to be on
here.   Q. Would that fact that you have now in mind con-
cerning the route of his going, would that be apt to influence
you in weighing his testimony on the witness-stand as to the
route which he says he took at that time?   What you have in
your mind now would be apt to influence you?   A. I think it
would.   Q. It could not be removed by his evidence, the evi-
dence on his behalf?   A. I rather have an opinion formed at
the time. . . . Q. You have no personal knowledge of how the
defendant got to Ensenada?   A. I have an idea.   Q. Of your
own personal knowledge or what someone told you?   A. Just
a suspicion at the time.   I know he didn't go the route which
most anyone would have gone, and knowing the trails as I
know them, I formed an opinion what trail he took.   Q. Do
you have any personal knowledge at this time as to the par-
ticular route or trail he took to Ensenada?   A. I know he
didn't travel the highway; he didn't take the general route
down there; he didn't go by stage or go by boat.   Q. That is
what you have been told?   A. Yes, sir.   Q. Have you an
opinion now as to whether he is guilty or innocent?   A. No,
nothing definite.   Q. Is it what you might call an impression?
A. Yes, sir. . . . Q. Don't you think, Mr. Guntermann,
you could listen to the testimony in this case and base your
verdict solely upon this testimony and not upon any suspi-
cion that you might have entertained at any particular time?
A. It would depend upon the evidence.   Q. Suppose there
wasn't any evidence as to how he got to Ensenada?   A. I
would have my own opinion then.''

One of the particular causes of challenge is as follows:
''For the existence of a state of mind on the part of the juror
in reference to the case, or to either of the parties, which will
prevent him from acting with entire impartiality and without
prejudice to the substantial rights of either party, which is
known in this code as actual bias.''   (Pen. Code, sec. 1073.)
From the testimony of Guntermann, as above stated, it is our
opinion that defendant's challenge to Guntermann was well

grounded and should have been allowed. Upon its denial he was peremptorily excused by the defendant. The record shows that the defendant exhausted his peremptory challenges and thereafter challenged a juror for cause, which challenge was denied. Under the circumstances shown by the record, the error of the court in denying the challenge to Guntermann was substantially injurious to the defendant. It was so held under similar circumstances shown in the case of *People* v. *Riggins,* 159 Cal. 113, [112 Pac. 862]. Concluding its comments upon the facts in that case, the court said: "The right to a fair and impartial jury is one of the most sacred and important of the guaranties of the constitution. Where it has been infringed, no inquiry as to the sufficiency of the evidence to show guilt is indulged and a conviction by a jury so selected must be set aside." In *People* v. *Durrant,* 116 Cal. 179, 196, [48 Pac. 75], the court said: "If the defendant feared to put himself upon trial before the jurors whom he had challenged, it was his duty to have availed himself of the liberal aid which the law affords, and to have excused them from the box. If, in so doing, he lessened the number of his peremptory challenges to such an extent that it appears they were exhausted before the completion of the jury, he may well be heard to urge in argument that by reason of the erroneous ruling the number of his peremptory challenges was improperly curtailed, and he was deprived of a legal right."

The defendant further claims that the court erred in refusing to strike out as hearsay evidence certain answers given by the state's witness, G. G. Gonzales. The statement of Gonzales which defendant sought to strike from the record was in substance that Gonzales "got information from good authority" that defendant was traveling on the Picacho Pass, going west. Also, on cross-examination, after the witness had stated that it was reported to him that "this Hindu" had been seen on the road from Mexicali to Tia Juana, defendant's counsel asked: "Do you know whether it was this Hindu or another one, or a Mexican?" The witness replied: "It is his description. I know from the simple fact I got it was a Hindu." Defendant's counsel moved to strike out this answer as hearsay. Both rulings were erroneous.

F. C. Kemp, a deputy marshal of the city of El Centro, testified that upon hearing of the death of Fared Bakhsh on the 14th of August, he went to the ranch where the defendant

lived. He found the dead body of Fared Bakhsh lying near a bridge east of the ranch house. Near that place he found several empty shells of a 32-caliber automatic pistol. Defendant claims that the court erred in admitting the testimony of the witness Kemp concerning the finding of the body of Hassen Ali; and in refusing to permit counsel for the defendant to cross-examine the witness concerning other results of his investigation of the premises than what had been testified to by him in answer to questions put by the district attorney. The witness testified as follows: "Q. Did you make any investigation to determine who had killed Fared Bakhsh? A. I did. Q. What did you do? A. I was told there were three men living on the ranch, that one of them they found dead and was identified as one of the three; it was Hassen Ali, and I immediately looked for Khair Din and Chanda Khan. Q. At the time you found the body of Fared Bakhsh, did you find the body of Hassen Ali? A. Yes, sir. Q. Where was it? Mr. Willson: Objected to as incompetent, irrelevant, and immaterial in this case. Q. The purpose of that is to show that Hassen Ali didn't kill Fared Bakhsh. Mr. Willson: Objected to as incompetent, irrelevant, and immaterial. Mr. Simon: I am not charging this defendant with the killing of Hassen Ali in this case; I am not trying him for the killing of Hassen Ali and you know it. The Court: Overruled. A. The body of Hassen Ali was on the bed in the house. Q. State whether or not he was dead at that time. A. He was."

The court did not err in overruling defendant's objection to the question inquiring about the location where the body of Hassen Ali was found, and we cannot see that the testimony was prejudicial to the defendant. A little later in the record we find that, without objection from the prosecution, the attorney for the defendant stated before the jury that "the case of Hassen Ali has already been tried and a verdict of not guilty rendered against this defendant." The jury would naturally infer from such statement that the defendant had been charged with the murder of Hassen Ali and had been acquitted. The circumstances of this case could not very well have been tried without bringing to light the fact that when those premises were examined, the bodies of two dead men were found there; indeed, that fact had been developed by the evidence without objection from the defendant.

The evidence showed that Fared Bakhsh had come to his death by means of shots fired from a 32-caliber gun, and that the defendant had such a gun.

Counsel for defendant have not given us any reference to the contents of the record showing the rulings of the court wherein it is claimed that the court erred in refusing to permit counsel for the defendant to cross-examine the witness concerning other results of his investigation of the premises than what had been testified to by him on direct examination. This it was their duty to do. (*People* v. *McLean,* 135 Cal. 306, [67 Pac. 770].) We find, so far as our reading has enabled us to trace the matter, that substantially all of the questions asked by the defendant's attorney on that subject were answered and permitted to remain in the record. It has not been made clear to us that the defendant has any ground of complaint with respect to that cross-examination.

By the testimony of Chanda Khan, a witness for the prosecution, it appeared that this witness and the defendant had leased the land on which they were residing and had taken into partnership Hassen Ali; that Hassen Ali had borrowed some money from Fared Bakhsh, who lived on a neighboring ranch; that Fared Bakhsh and his partners had borrowed some oil and grease from Khair Din and his partners which they had not promptly returned; that Khair Din had insisted that the return of the oil and grease be demanded and that some unfriendly words had passed between Khair Din and Hassen Ali relating to that matter. This brings us to the next assignment of error, which is, that "the court erred in permitting the witness Chanda Khan, whom the defense contended committed the murder, to testify and give hearsay evidence in order to show the malice of defendant toward Fared Bakhsh." The witness had referred to a conversation between Hassen Ali and their lessor, Mr. Meserve, in which Hassen Ali said to Mr. Meserve: "I owe some money to Fared Bakhsh and I want my interest to be mortgaged to him." Defendant's attorney interposed an objection to this, unless it was shown that the witness was present at the conversation. Thereupon the following appears in the record and is the evidence to which the assignment of error applies: "Q. Did Hassen Ali report to you the conversation he had with Mr. Meserve in regard to signing this lease? Mr. Willson: Objected to as hearsay. The Court: Overruled. A. Yes, sir. The follow-

ing day, he said that he had mortgaged to Fared Bakhsh his interest in the lease, for the crop, rather. Q. Go ahead. A. Hearing this, Khair Din said: 'Well, I don't like this kind of work because I had some kind of misunderstanding with Fared Bakhsh heretofore and you have given him full authority to act hereafter and that won't do.'' It will be observed that the witness, in the answer to which appellant excepts, did not attempt to state the terms of the conversation as reported to him by Hassen Ali. The important element in the testimony was that Hassen Ali, in the presence of the defendant, stated that he had mortgaged his interest in the lease to Fared Bakhsh and that the defendant expressed dissatisfaction with that transaction. This was admissible, together with the other testimony tending to show that there had been some misunderstanding between defendant and Hassen Ali, and between the defendant and Fared Bakhsh, and that threats to kill Fared Bakhsh had been made by the defendant.

Because of the court's error in denying defendants' challenge to the proposed juror Guntermann, and because, under the facts shown by the record as above stated, the error resulted in the denial of a substantial right of the defendant, in the selection of the jury, the judgment is reversed and the order denying a new trial is reversed.

Shaw, J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 8, 1919, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 10, 1919.

All the Justices concurred, except Olney, J., who was absent.